UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL HARPER, ) | |
| ) | 14 C 1237 |
| Plaintiff, ) | |
| ) | Honorable Judge |
| vs. ) | Edmond E. Chang |
| ) | |
| THOMAS DART, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT DART'S BRIEF IN ADVANCE OF A PAVEY HEARING**

NOW COMES the Defendant, THOMAS DART, in his official capacity as the Sheriff of Cook County, by his attorney, ANITA ALVAREZ, State's Attorney of Cook County, and through her Assistant, Helen C. Gibbons, and submits this brief in support of his position that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. In support of Defendant's position, he states as follows:

**INTRODUCTION**

Plaintiff, Darryl Harper ("Plaintiff"), a pretrial detainee at the Cook County Jail ("CCJ"), filed numerous grievance forms prior to filing this lawsuit, however he only filed one grievance form regarding the issues presently before this court and never exhausted his administrative remedies prior to the filing of this lawsuit. Plaintiff initiated this lawsuit on February 19, 2014. (See Dkt. #1). The current complaint details two issues: (1) that Plaintiff needed ADA housing and was not housed appropriately and (2) that the grievance system is not adequate at the jail. (See Exhibit "Exh." A, Plaintiff's Amended Complaint). Neither issue was exhausted administratively by Plaintiff prior to intimating this lawsuit. Thus, for the reasons state herein, Plaintiff's claims must be dismissed.

## STANDARD OF REVIEW

The Seventh Circuit has taken a "strict compliance approach to exhaustion, meaning that the prisoner must properly use the prison's grievance system." *Santiago v. Anderson*, 496 Fed.Appx. 630, 636 (7th Cir. 2012); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Thus, "[a] prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809; citing *Pozo* v. *McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Proper exhaustion is required before a detainee may file a lawsuit. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2001); *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999).

## FACTUAL BACKGROUND

Defendants anticipate the following facts and evidence will be put forth at the hearing in this matter[1]:

Rather than give the CCJ grievance procedure an opportunity to work, Plaintiff filed the instant action alleging Sheriff Dart failed to house him appropriately and further alleging the grievance procedure at CCJ is inadequate. (Exh. A). Plaintiff utilized the grievance procedure numerous times, but never once appealed any grievance, nor did attempt in any way to pursue and exhaust his administrative remedies. Plaintiff only filed one complaint via the grievance process addressing the issues he now brings before this Court. (Exh. B, Plaintiff's complaint collected February 7, 2014). That grievance form, as addressed more fully below, was deemed a request due to the lack of time frame and numerous issued raised and returned to Plaintiff

---

[1] As there will be an evidentiary hearing, with in person testimony, Defendant has not filed the depositions in this matter, however, will supplement this filing with the depositions if needed by the Court.

2

February 13, 2014 and he chose not to resubmit and exhaust his remedies prior to initiating this lawsuit. (Exh. B).

Per the directions on the grievance form, Detainees at the CCJ have the opportunity to resolve complaints by submitting them in writing to a CRW within 15 days of the issue being complained of. (See generally Exh. B; see also Exh. C, Exh. D and Exh. E, Plaintiff's other grievance forms filed prior to initiating this litigation, and Exh. F, Sheriff's Order 11.14.5.0). In order to properly respond to complaint, Detainees must timely submit only one issue per form to allow for the exact complaint to be forwarded on to the appropriate department to address the issue. (Exh. B).

Grievances receive a control number and can be appealed. (Exh. B-F). As stated in the directions on the grievance form, and the General Order governing the grievance process, if a complaint if deemed a non-grievance (request) an inmate may re-submit the grievance issue after 15 days as a grievance, and obtain a "Control Number" if there has been no response to the request or the response is deemed unsatisfactory. (Exh. B-F). Then, upon receiving that grievance response, if a detainee choses, may file an appeal. (*Id.*). Regardless of how an issue or complaint submitted and processed, whether as a request or a grievance, a detainee always has a conduit to appeal and exhaust the issue and his remedies.

Plaintiff submitted grievance forms that were collected by a correctional rehabilitation worker ("CRW") on the following dates: two on April 25, 2013; two on January 29, 2014; three on January 31, 2014; one on February 7, 2014.[2] (Exh. B-E). In the April grievances forms, Plaintiff complains of one nurse and his sick call request slips. (Exh C). These grievance forms were given a control number and processed as a grievance. Plaintiff chose not to appeal either

---

[2] For clarity, the date on the lower right hand page of the grievance form, the date it is collected by the CRW is referenced.

3

one. (*Id.*). Also, Plaintiff does not sue regarding any issue with a nurse or his sick call request slips.

Plaintiff's January 29th grievance forms pertain to problems with his bandage changes and concerns he had regarding transportation relating to a future court date a month later. (Exh. D). His complaint regarding bandage changes was processed as a grievance and given a control number. Plaintiff chose not appeal this grievance. (*Id.*). His form regarding court was processed as a request and he chose not to resubmit it as a grievance, which would have given him the opportunity to appeal the response if he wanted to do so. (*Id.*). Furthermore, none of these issues are raised in this lawsuit.

On January 31st, Plaintiff filed grievance forms regarding his return from Stroger Hospital, the fact he was shackled at Stroger in September or July, and his bed sores. (Exh. E). these forms were not timely and/or not clear and were processed as requests. (*Id.*). Plaintiff never resubmitted these issues to obtain a control number, which would have given him the opportunity to appeal the response if he chose to do so. (*Id.*). Even if Plaintiff was dissatisfied with a delay or lack of response on these three issues, he also could have grieved that, addressing the entire process. However, Plaintiff chose not to pursue any of the additional administrative remedies available to him on these issues and none of these issues are currently part of this litigation.

Finally, Plaintiff submitted a form prepared by his attorney dated February 7, 2014 and marked as an "emergency grievance." (Exh. B). This is the first time that he raises any issue related to this present lawsuit. That form was reviewed immediately because it was marked emergency, however it did not indicate that he was at risk of immediate harm to his welfare or safety or involve his transfer to another county jail facility so it was not deemed an emergency

4

grievance. (Exh. F). Further, because that form contained numerous complaints, with no specific date at issue, and no location, it was marked as a request and Plaintiff was advised to separate out his complaints and provide details regarding those complaints. (*Id*., p.2). Plaintiff received this grievance form, signed it on February 13, 2014, and chose not to resubmit it as a grievance, and chose not to avail himself of the opportunity to exhaust the remedies available to him by appealing an unsatisfactory reasons. Instead, he filed this lawsuit on February 19, 2014.

Despite the abundant grievance forms filed by Plaintiff, he never completed the grievance process by either resubmitting his requests to be considered as grievances, or appealing any grievances. Plaintiff had numerous opportunities to do so. Plaintiff was admitted to Stroger Hospital throughout his time in custody. Other than two one-day visits to the hospital, he was hospitalized five times prior to the filing of this lawsuit. (Exh. H, Plaintiff's Bed Assignments, HP noting his Hospital stays). Even when he was hospitalized, he was visited by CRWs 23 times. (Exh. G, Hospital Contact Forms). Plaintiff was given writing supplies, stamped envelopes and any other help he needed, and yet Plaintiff never filed any grievance forms during those times.

## ARGUMENT

**I.      Plaintiff failed to properly exhaust all available administrative remedies before filing his lawsuit as required by the PLRA.**

This Court should dismiss this matter because Plaintiff failed to properly exhaust all of his administrative remedies prior to filing this lawsuit. The Prison Litigation Rights Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the PLRA is to allow for "corrective action" to be taken in response to

5

an inmate's grievance and to improve prison administration and satisfy the inmate. *Booth v. Churner*, 532 U.S. 731, 737 (2001). Section 1997e(a) requires "proper exhaustion"; that is, the inmate must file a grievance utilizing the procedures and rules of the state's prison grievance process. *See Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). The "applicable procedural rules" that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 218 (2007); see also *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)(Section 1997e(a) requires a "prisoner [to] file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

Cook County Jail had an established grievance procedure in 2013 and 2014 that was available to all detainees. *See Smith v. Holbert*, 11 C 0188, 2012 U.S. Dist. LEXIS 137347, at * 17 (N.D Ill. Sept. 25, 2012)(citing John Howard Association's Court Monitoring Report, filed on May 12, 2000, in *Duran v. Sheahan*, 74 C 2949 (N.D. Ill), which reflected that the Cook County Jail has "an established and publicized grievance procedure") (Attached in Exh. K, see also Exh. B-F). A detainee confined within the Cook County Department of Corrections is required to follow the grievance procedures outlined in the CCJ General Order 11.14.5 to properly exhaust his claims. (Exh. F). Also, that process is explained in the detainee handbooks; Plaintiff signed that he received a handbook upon entry to the jail. (Exh. I and J, Plaintiff's Jail History Card and the detainee handbooks utilized during Plaintiff's detention). This is a procedure that, given Plaintiff's numerous grievance forms, he was clearly able to understand and participate in to the extent he wished to do so.

Cook County Jail's grievance procedure provides jail officials the opportunity to investigate the validity of Plaintiff's claims and allows them time to take appropriate actions in response to their findings. *See Woodford*, 548 U.S. at 93. Permitting detainees to circumvent the process by allowing them to file lawsuits before filing an appeal would render any such investigations, and ultimately the PLRA, a "useless appendage." *Id*. Plaintiff attempted to circumvent the process by rushing to the federal courthouse to initiate this instant action. Due to Plaintiff's failure to properly exhaust his administrative remedies, Defendant Dart is entitled to judgment as a matter of law and dismissal of this action.

The Supreme Court has stated that Congress' intention in requiring mandatory administrative-exhaustion requirements was to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 525 (2001). The Court noted that administrative requirements may cause "corrective action" to be taken in response to an inmate's grievance and might improve prison administration and satisfy the inmate. *Id., citing Booth v. Churner*, 532 U.S. 731, 737, (2001). The Court further noted that internal review might "filter out frivolous claims." *Id., quoting Booth*, 532 U.S. at 737. Finally, the Court concluded that when cases actually do reach federal court after the administrative remedies have been exhausted, the court's "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id., quoting Booth*, 532 U.S. at 737.

None of these broad policy goals is served by allowing Plaintiff to proceed in this lawsuit after not specifically exhausting the claims he brings forth. There has been no opportunity for "corrective action" to take place with respect to Plaintiff's claim that Sheriff Dart did not provide him with adequate housing or that Plaintiff was had any issues with the grievance procedure. No internal review has examined whether Plaintiff's claim is frivolous or possesses merit.

Moreover, the failure to raise these claims administratively means no administrative record clarifying the controversy is present for this Court.

The only time Plaintiff submitted a grievance form relating any issue related to the present complaint was collected on February 7, 2014. That form was processed on the same day and returned to Plaintiff on February 13, 2014. Rather than wait for a response to his grievance and allow the CCJ officials to remedy the issues involved, Plaintiff, with the benefit of counsel, brought this present suit. "Administrative remedies have not been exhausted unless the inmate has given the process a chance to work and followed through with administrative appeals." *Worthem v. Boyle*, 404 Fed.Appx. 45, 46 (7th Cir. 2010). Plaintiff chose to pursue his claim in the district court days after receiving his response to his request and prior to any exhaustion.

Had Plaintiff waited to receive a response, the CCJ's response could have narrowed the dispute and avoided the need for litigation. *See Perez*, 182 F.3d at 537. Following proper procedure would also give Plaintiff and the other detainees an effective incentive to avail themselves of the prisoner grievance system in the future and give CCJ officials fair notice to amend their own oversights. *See Woodford*, 548 U.S. at 94. Only then may the grievance system produce its full benefits of allowing CCJ officials to address complaints internally before allowing a detainee to make a premature federal case out of them. *Id.* at 95; s*ee Porter*, 534 U.S. at 525. Because he attempted to circumvent this process by initiating a premature lawsuit, Plaintiff failed to comply with the PLRA's exhaustion requirement and this case must be dismissed.

## II. The grievance procedure was always available to Plaintiff.

Defendants anticipate that Plaintiff will contend that the grievance process was unavailable to him. Officials cannot take an unfair advantage of the exhaustion requirement by

making such exhaustion unavailable. *See Dole,* 438 F.3d at 809. There are several ways in which an administrative process might not be available to a prisoner. For example, if grievances are to be filed on a particular form but the form is never provided to the prisoner, then there is no "available" remedy, despite its hypothetical possibility. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). If a detainee is incapacitated and unable to file a grievance, the law may demand that, after an appeal, the entity must consider if the detainee's incapacitation was "good cause" for the late filing. *Hurst v. Hantke*, 634 F.3d 409, 411-412 (7th Cir. 2011). However, a detainee, in order to pursue litigation, must show he exhausted his administrative remedies by filing a grievance and moving through the process as soon as he or she reasonable can do so. *Hurst*, 634 F.3d at 412 *citing Obriecht v. Raemisch*, 517 F.3d 489, 492-93 (7th Cir. 2008). Finally, administrative remedies can be rendered unavailable by a prison official's failure to respond to inmate grievances. *See Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Lewis v. Washington*, 300 F.3d 829, 835 (7th Cir. 2002).

**A. Social workers and the ability to submit a complaint were available to Plaintiff.**

Plaintiff will claim that the grievance system was unavailable to him for any given reason, however, it remains undisputed that he was able to file ample forms and never once appealed the response he was given. Specifically, Plaintiff will likely argue that since he had not received a response to a few his grievance forms from CCJ officials, he had no other choice but to file the instant lawsuit. Also, at times Plaintiff may claim that he was too sick to file a grievance or that he was unable to locate a CRW. However, Plaintiff was visited when he was in the hospital, provided with writing supplies, including stamped envelopes, paper, and pens. (Exh. H). Also, it is clear from Plaintiff's numerous other grievances filed regarding other issues that Plaintiff was more than familiar with how to submit grievance forms. However, rather than give

9

the CCJ officials an opportunity to address his complaints internally, he initiated the present action without properly pursuing his administrative remedies.

Here, Plaintiff never even tried to file a grievance while he was in the hospital. Had he wanted to, he would have had the ability to mail his grievance via the mailing supplies given to him. He was not required to utilize the grievance form and could have used any paper. Plaintiff clearly understood that given he submitted a typed complaint in Exh. B. Or he could have had a CRW assist him or even write the grievance for him while in the hospital. Finally, he needed to file the grievances when he reasonably could. Plaintiff claims he did that, however there is no issue regarding his hospitalization before the court. Furthermore, Plaintiff never appealed any grievance and never resubmitted any request as a grievance.

**B. Delays or failure to respond to grievances is not applicable to this case.**

When courts have found that administrative remedies were unavailable due to a failure to respond by prison officials, the inmate had filed several unsuccessful grievances and asked about the failure to respond. *See Dole*, 438 F.3d at 807-13; *Brengettcy v. Horton*, 423 F.3d 674, 682-83 (7th Cir. 2005)(administrative remedies were unavailable because the prisoner had filed "many" unanswered grievances, had followed up on his unanswered ones and was told by prison officials that grievances sometimes get "torn up")(emphasis added). Several courts, distinguishing *Brengettcy*, have found that "[s]imply submitting a grievance and not receiving a response is insufficient to establish that the grievance process is unavailable." *Goldsmith v. Zolecki,* No. 12 C 3965, 2013 U.S. Dist. LEXIS 150479 (N.D. Ill. Oct. 18, 2013); see also *Taylor v. Cook Cnty.*, No. 11 C 7427, 2013 U.S. Dist. LEXIS 72890 (N.D. Ill. May 23, 2013); *Logan v. Emerson*, No. 10 C 4418, 2012 U.S. Dist. LEXIS 113056 (N.D. Ill. Aug. 9, 2012); *Nesbitt v. Villanueva*, No. 09 C 5299, 2010 U.S. Dist. LEXIS 125966 (N.D. Ill. Nov. 29, 2010) (See

written opinions attached hereto as Exhibit 4). Here, Plaintiff never once had a grievance that was not responded to. Only three untimely and vague requests by Plaintiff may not have received a response. His only grievance form submitted regarding any issue he brings before this Court was timely responded to and he never refiled those issues as grievances prior to initiating this litigation.

As in *Nesbitt* and *Logan*, simply submitting a grievance and then rushing off to file a federal lawsuit when a response is delayed did not make the grievance procedure at the CCJ unavailable to Plaintiff. Plaintiff started the administrative grievance process and then abandoned it before it could work. At the time he filed his complaint, the administrative process was still available to him, and he had not complied with the critical procedural rules of that process.

Detainees who have health issues may be afforded greater latitude with the grievance procedure, if he or she fully apprises the jail official of the circumstances. When determining whether administrative remedies are unavailable the relevant inquiry is whether the plaintiff did all he could to avail himself of the administrative process. *See Dole,* 438 F.3d at 809. As long as the administrative authority has the ability to take some action in response to the grievance an administrative remedy is still "available" under the PLRA. *Id*.; *Booth v. Churner*, 532 U.S. 731, 741 (2001). Here, regarding the issues in his lawsuit, Plaintiff abandoned the grievance process and initiated litigation.

## **CONCLUSION**

Clearly, Plaintiff has failed to demonstrate that he did all he could do to exhaust his administrative remedies or that CCJ officials "exploit[ed] the exhaustion requirement through indefinite delay in responding to grievances." *Lewis*, 300 F.3d 829. Instead, Plaintiff never

followed through with any second step to move through the administrative process prior to initiating litigation. He never once even tried to appeal any issue, even the issues not part of this litigation. Plaintiff did not give the CCJ officials a "fair and full opportunity to adjudicate [his] claims." *Woodford*, 548 U.S. at 90; see also *Pozo*, 286 F.3d at 1024). Plaintiff "jumped the gun" by launching this lawsuit before receiving a final response from the CCJ officials, in effect telling the CCJ to "go fly a kite" while he pursued his own remedy in federal court. *See Ford*, 362 F.3d at 398-99. Accordingly, Plaintiff failed to exhaust his administratively remedies prior to initiating the instant action and the Defendants are entitled to judgment in their favor.

WHEREFORE the Defendants, THOMAS DART, in his official capacity as the Sheriff of Cook County, for all of the foregoing reasons, respectfully requests that this Honorable Court dismiss this present action with prejudice and for any other relief deemed appropriate.

Respectfully submitted,

ANITA ALVAREZ
State's Attorney of Cook County

/s/ *Helen C. Gibbons*
  Helen C. Gibbons
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-6981

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused true and correct copies of the above and foregoing to be served Plaintiff pursuant to ECF, in accordance with the rules of electronic filing of documents, on this 27th day of January 2015.

/s/ Helen C. Gibbons

HELEN C. GIBBONS