**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DARRYL HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 01237 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| THOMAS DART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Darryl Harper is a detainee at the Cook County Jail. He is disabled, wheelchair-bound, and suffers from several chronic illnesses. Harper complained to correctional officers, asking for handicap-accessible housing and adequate medical care. He says his complaints were ignored. Furthermore, Harper alleges that during his stay at Stroger Hospital, which is the primary hospital for the Jail, he was shackled to his hospital bed per a Sheriff's Department policy. Based on these allegations, Harper sued Sheriff Dart, in his official capacity only, and Cook County under 42 U.S.C. § 1983; the American with Disabilities Act, 42 U.S.C. § 12132; and the Rehabilitation Act, 29 U.S.C. § 794.[1]

Cook County answered, R. 83, but Dart moved to dismiss, R. 84, Mot. Dismiss. Dart argues that Harper has failed to adequately plead any of his claims. The Court agrees in part. Dart's motion to dismiss is granted (though without prejudice, at least for now) as to Harper's § 1983 claims for inadequate facilities and

---

[1]The Court has subject-matter jurisdiction over these federal claims under 28 U.S.C. § 1331. Citations to the record are "R." followed by the docket number then the page or paragraph number.

medical care, and as to his ADA and Rehabilitation Act claims. But the motion is denied as to Harper's § 1983 claim based on Dart's shackling policy.

## I. Background

In considering the motion to dismiss, Harper's factual allegations must be accepted as true. Harper entered the Cook County Jail on March 12, 2013. R. 82, Second Am. Compl. ¶ 5. He must use a wheelchair and he suffers from several chronic medical conditions. *Id.* ¶ 6. Since the time of Harper's intake, correctional staff has been aware that Harper requires special housing to accommodate his physical limitations and need for regular medical care. *Id.* ¶ 7. Harper repeatedly requested accessible living conditions. *Id.* ¶ 8. His requests were ignored and he was assigned to an inaccessible cell. *Id.* For most of Harper's incarceration, he has been assigned to the third floor of Cermak Infirmary. *Id.* ¶ 11. The cell's layout causes Harper "great difficulty" with showering, toileting, and getting into bed. *Id.* ¶ 9. Harper also alleges that he has been injured by deficiencies in the quality of the infirmary's medical care; the deficiencies are supposedly the subject of *United States v. Cook County,* 10 C 2946. *Id.* ¶ 12. Per Harper, the infirmary's inadequate medical care required him to be admitted to Stroger Hospital on several occasions. *Id.* ¶ 13. While at the Hospital, he was, at all times, shackled to his bed per Dart's explicit policy. *Id.* ¶ 14. Requests to remove the shackles were ignored. *Id.* ¶ 15.

## II. Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of*

*Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Rule 8(a)(2) applies to most claims, requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). And it must "contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations, but not legal conclusions, are assumed to be true. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Relying on Harper's complaint and the parties' briefs, the Court construes Harper as making four claims against Dart and Cook County:

(1) a *Monell* claim alleging a widespread practice of providing constitutionally inadequate medical care,

(2) a *Monell* claim based on Dart's express policy of shackling detainees in the hospital,

(3) a *Monell* claim alleging a widespread practice of assigning wheelchair-bound inmates to constitutionally inadequate, inaccessible housing; and

3

(4)   claims under the ADA and the Rehabilitation Act (which follow the same analysis, so the Court treats them as one claim for now) also alleging inaccessible facilities.

The Court addresses each in turn.

### A. Section 1983 Claims

Harper brings three claims under 42 U.S.C. § 1983. Section 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen … to the deprivation of any rights … secured by the Constitution … shall be liable to the party injured." To hold a municipality liable, not only must a plaintiff prove the deprivation of an underlying substantive right (§ 1983 does not supply the substantive right, and instead is only the cause of action to vindicate the right), the plaintiff must show that the deprivation was caused by the municipality's policy or custom, or by a final policymaker for whom the municipality is responsible. Here, Harper's § 1983 claims are against Dart in his official capacity as Cook County's Sheriff. R. 99, Minute Entry ("Plaintiff confirmed that there is no claim against Dart in his individual capacity."). Official capacity claims against municipal officials are, in effect, claims against the municipal body itself. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself.") (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Municipalities, like individuals, are suable "persons" under § 1983. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("We held in *Monell* … that municipalities and other local

4

governmental bodies are "persons" within the meaning of § 1983.") (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Claims against municipalities are often called *Monell* claims. To make out a *Monell* claim—that is to show that a municipal "person" caused a deprivation of the plaintiff's constitutional rights—a plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (internal quotation marks omitted). That showing, practically speaking, breaks down into three parts.

First, the plaintiff must allege that he or she has suffered the deprivation of a constitutional right. *See* 42 U.S.C. § 1983. (Section 1983 is only a vehicle to vindicate rights found elsewhere, most often in the United States Constitution; it provides no substantive rights itself.) Second, the plaintiff must allege that the municipality's "official policy or custom," the one the plaintiff believes caused him harm, actually exists. *Estate of Sims*, 506 F.3d at 514. There are three ways to do this: one can allege "(1) an express policy, (2) a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or (3) [] the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). The express-policy and individual-action routes are self-explanatory. But to go the widespread-practice route, a plaintiff must allege that the relevant official (in this case Dart) was "deliberately indifferent

5

to the known or obvious consequences" of the alleged widespread practice. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009) (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). In order for a plaintiff to prevail on a deliberate-indifference claim in this context, the relevant official "must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.* There can be no liability under the widespread practice theory unless the plaintiff shows (and at the pleading stage, adequately alleges) that the official knew of the practice or that it was "so pervasive" that he must have known. *See Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006). Finally, once the plaintiff has alleged a deprivation and a custom or a policy, the plaintiff must allege causation: the plaintiff must connect the policy or custom to the constitutional deprivation by alleging that the former was the "moving force" behind the latter. *Estate of Sims*, 506 F.3d at 514.

### 1. Inadequate Medical Care

Dart's motion to dismiss is granted as to Harper's *Monell* claim alleging a widespread practice based on "structural problems in the administration of healthcare at the jail" including inadequate staffing, "assigning the sickest prisoners to the third floor of Cermak Infirmary," and the failure to provide "life essential wound care." Second Am. Compl. ¶¶ 11-13; R. 91, Harper's Resp. Br. at 6. The underlying substantive right arises from the Due Process Clause of the Fourteenth Amendment, which bans deliberate indifference to the serious medical needs of pretrial detainees. *Pittman v. Cnty. of Madison*, 746 F.3d 766, 775 (7th Cir.

6

2014). To succeed on a *Monell* claim based on a widespread practice, Harper must allege that the conditions were so persistent and widespread that Dart must have known about them. *Latuzskin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001); *Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1094 (N.D. Ill. 2007).

The Second Amended Complaint falls well short of adequately alleging a widespread-practice claim. Aside from alleging that it was Dart's "widespread practice . . . to assign some of the Jail's sickest prisoners to the third floor of the Cermak Infirmary" and citing—by name only—another case involving the same issues (the prison-institution litigation brought by the United States Justice Department in *United States v. Cook County*), Harper provides no *factual* allegations (as distinct from statements of bare conclusions) to support this claim. Second Am. Compl. ¶ 12. To be sure, it might have been appropriate for Harper to rely on specific factual allegations in the Justice Department complaint, but Harper makes no effort to actually point to any. Only when the specific factual allegations are known can the Court possibly evaluate whether a claim has been stated as a matter of substance (that is, deliberate indifference to serious medical needs) or, more importantly here, as a matter of stating a *Monell* claim. In an adversarial system of litigation, it is not up to the Court to sift through the referenced-lawsuit's filings, of which there are hundreds, looking for factual allegations to support Harper's attempt to plead a claim on this issue.

7

## 2. Shackling Claim

Dart's motion to dismiss is denied as to Harper's claim challenging Dart's "explicit policy" of shackling wheelchair-bound detainees in Stroger Hospital. Second Am. Compl. ¶¶ 13-16; Harper's Resp. Br. at 7. To state a claim for unlawful restraint (again, under the Due Process Clause of the Fourteenth Amendment), Harper must allege that the use of bodily restraints is not rationally related to a legitimate non-punitive government purpose or that their use appears excessive and objectively unreasonable in relation to the purpose they serve. *Davis v. Wessel*, 792 F.3d 793, 800 (7th Cir. 2015); *see also May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000).[2] Harper alleges that, per an official policy, he was shackled to his hospital bed despite the presence of two armed guards. Second Am. Compl. ¶ 14; Harper's Resp. Br. at 7. This was excessive, he argues, because he is wheelchair-bound and his chronic health conditions make him less dangerous. *Id.* at 11. Those allegations state a claim. Harper's allegations are very close to, if not more serious than those in *May*, which reversed the grant of a motion to dismiss a claim based on the same policy. 226 F.3d at 884. At this stage of the litigation, the inquiry is limited to the facts in the Second Amended Complaint, which of course does not set forth any facts

---

[2]Restraint claims by pretrial detainees, like Harper's, have traditionally been evaluated under this standard, which originated in *Bell v. Wolfish*, 441 U.S. 520, 561 (1979), and *Youngberg v. Romero*, 457 U.S. 307, 324 (1982). But there is an argument that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which adopted an objective standard for excessive force claims brought by pretrial detainees, *id.* at 2470, may be a better fit. *See Davis*, 792 F.3d at 801 ("There was great debate between the parties as to whether *Kingsley* … controls this [restraint] case."). The parties here have not raised that possibility but should consider whether to do so at the summary judgment stage.

that would justify always shackling every prisoner to a hospital bed at all times, even though armed guards are present. This claim survives.

### 3. Inaccessible Facilities

Dart's motion to dismiss is granted as to Harper's claim that Dart was deliberately indifferent to a widespread practice at the jail of assigning wheelchair-bound detainees to inaccessible housing. Second Am. Compl. ¶¶ 9-11; Harper's Resp. Br. at 4. This practice, per Harper, deprived him of his constitutional right to "the minimal civilized measure of life's necessities" by "caus[ing] him great difficulty when toileting, showering, and transferring to his assigned bed." Second Am. Compl. ¶ 9. The Second Amended Complaint does not describe what is meant by "great difficulty."

It is of course true that "facilities to wash and use the toilet," among other things, "are among the minimal civilized measure of life's necessities that must be afforded prisoners." *Jaros. v. Ill. Dep't of Corr.*, 684 F.3d 667, 670-71 (7th Cir. 2012). But experiencing "great difficulty" which is how Harper characterizes the use of the facilitites) accessing or using these necessities is not the same as not having them; difficulty is not deprivation, and deprivation is what violates the Constitution. *Id.* at 671. In *Jaros*, the Seventh Circuit distinguished between a disabled inmate's constitutional claim and his claim under the ADA and the Rehabilitation Act. When rejecting the *constitutional* claim for access to showers, the Seventh Circuit went so far as to point out the number of times the inmate showered per month (four times), and that the presence of grab bars would not have made a difference to the amount

9

of pain he experienced because he experienced the same severe pain all the time. *Id.* In the Second Amended Complaint, Harper does not explain what is meant by "great difficulty," which really is just a bare conclusion rather than a *factual* allegation entitled to the presumption of truth. It might very well be that Harper could allege facts to state a claim, and (as discussed below) he may seek leave to amend the complaint again (the dismissal is, for now, without prejudice), but the Second Amended Complaint does not state a claim.

### B. Statutory Claims

Although a much closer question, Dart's motion to dismiss is also granted on the claim that Dart violated Harper's rights under the ADA and the Rehabilitation Act by denying him equal access to washing facilities, toilets, and bedding. Second Am. Compl. ¶ 9. To state a claim under the Rehabilitation Act,[3] Harper "need only allege that (1) he is a qualified person (2) with a disability and (3) [Dart] denied him access to a program or activity because of his disability." *Jaros,* 684 F.3d at 671-72 (citing 29 U.S.C. § 705(2)(B)). One can "deny access" by failing to reasonably accommodate a plaintiff's disability. *Id.* ("Refusing to make reasonable accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, the Supreme Court has located a duty to accommodate in the statute generally.") (internal quotation marks omitted).

---

[3]Dart concedes that the analysis under both Acts is materially identical. R. 84, Dart's Br. at 4, n.1 (citing *Jaros,* 684 F.3d at 671). And the two Acts also provide the same relief. *Id.* at 671-72. The only material difference is that the Rehabilitation Act requires the plaintiff to prove that the defendant accepts federal funds. R. 84, Dart's Br. at 4, n.1 (citing *Id.* at 671). Dart rightly concedes this point. *Id.* So, for simplicity's sake, this Court will, as the Seventh Circuit has done, "dispense with the ADA" analysis and focus on the Rehabilitation Act. *Id.* at 671-72.

Harper comes close, but fails, to state a claim under the ADA and the Rehabilitation Act. It is true that Harper adequately alleges that he is a qualified, disabled person by alleging that he is wheelchair bound. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) ("Wagoner's paraplegia qualifies as a disability."); *see also Jaros*, 684 F.3d at 671-72 (prisoner-plaintiff with hip problem qualified due to mobility impairment). But Harper fails to adequately allege *facts* as to a denial of equal access. As in his parallel constitutional claim, all Harper has alleged is "great difficulty" showering, toileting, and getting into bed. Those two words alone do not explain how Harper was denied equal access and are therefore not enough to allow a plausible inference that the failure to give Harper different accommodations denied him access equal to that of other prisoners. To be sure, it would not have taken much to adequately allege a failure to provide equal access. *See Jaros*, 684 F.3d at 671-72 (reversing order granting motion to dismiss where prisoner explained how inaccessible facilities affected his access to meal and shower facilities). But once again Harper's allegations are just conclusions without facts, which are not enough. As discussed next, the dismissal of the ADA and Rehabilitation Act claims is also without prejudice, but it is up to Harper to seek leave to amend.

### C. Leave to Amend

Harper's § 1983 claims for inadequate medical care and inaccessible facilities, as well as his ADA and Rehabilitation Act claims, are dismissed without prejudice. If Harper wishes to re-plead them, he must file a motion seeking leave to do so.

Given the discovery schedule, this motion will be due on or before November 17, 2015. Also, because the Rule 16(b) deadline to amend the pleadings has passed, R. 21 ("any amendments to pleadings … shall be filed on or before 08/04/2014"), Harper will need to satisfy the "good cause" standard in Rule 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). He must therefore explain why—this late in the game—he deserves a fourth chance at pleading these claims. Perhaps the parties have engaged in enough discovery so that the claims have been made more specific, so leave to amend would be appropriate (and perhaps would be uncontested, at least in part), but Harper must take the initiative to propose a Third Amended Complaint and to explain why leave is justified.

## IV. Conclusion

Dart's motion to dismiss, R. 84, is granted as to Harper's § 1983 claims for inadequate medical care and inaccessible facilities and as to Harper's statutory claims. The motion is denied as to Harper's shackling claim.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: October 21, 2015